**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 3rd day of May, 2016.**



Robert D. Berger
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

**Stevie Nicole Dunson,**                                                            **Case No. 15-21340**
       **Debtor.**                                                                              **Chapter 13**

---

### MEMORANDUM OPINION AND ORDER OVERRULING THE CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION UNDER 11 U.S.C. §§ 1325(a)(3) AND (a)(7) AND DENYING THE MOTION TO DISMISS OR CONVERT DEBTOR'S CASE TO CHAPTER 7

The Chapter 13 Trustee (the Trustee) objects to confirmation and moves to dismiss or convert Debtor's case to Chapter 7.[1] At issue is whether the Bankruptcy Code permits Debtor to file under Chapter 13 and propose confirmation of a plan that pays only the filing fee, the Debtor's attorney's fees, and the Trustee's commission.[2] The matters are submitted on the pleadings for this Court's consideration. Here, the Court finds the Debtor filed her case and Chapter 13 Plan in good faith, not by any means forbidden by law.

---

[1] Doc. 25. Debtor, Stevie Nicole Dunson, appears by her attorney, Chris W. Steffens, Topeka, KS. Trustee, William H. Griffin, appears *pro se*.

[2] The Trustee receives a percentage fee in accordance with 28 U.S.C. § 586(e)(1)(B). This percentage fee is assessed on all payments the Trustee receives under a Chapter 13 Plan. 11 U.S.C. § 1326(b)(2).

16.05.03 (Dunson) Order Overruling Trustee's Objection and Motion to Dismiss.docx

## VENUE AND JURISDICTION

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by 28 U.S.C. § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013.[3]  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  The parties do not object to venue or jurisdiction.

## FINDINGS OF FACT

On June 24, 2015, Debtor Stevie Nicole Dunson (Stevie) filed her bankruptcy petition[4] and Chapter 13 Plan (the Plan).[5]  On June 25, 2015, the Court granted Stevie's application to pay her filing fees in installments.[6]  Stevie has no bankruptcy filings within the past eight years[7] and certified she has completed pre-petition credit counseling.[8]  Stevie's income is below median[9] and at the time of filing, she supported her one-year-old son and seven-year-old daughter.[10]  Stevie paid Envista Credit Union $1,125 within 90 days of her petition and paid her father $300 within one year of her petition.[11]  Stevie's Plan proposes at least 36 monthly payments of $100.[12]

---

[3] D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2016).
[4] Doc. 1.
[5] Doc. 3.
[6] Doc. 6. FED. R. BANKR. P. 1006(b) allows paying the 28 U.S.C. § 1930(a)(1) Chapter 13 filing fee in installments.
[7] Doc. 1, at 2.
[8] *Id*. at 12–13.
[9] *Id*. at 57–59.
[10] *Id*. at 43.
[11] *Id*. at 5 ¶ 3.
[12] Doc. 3, at 1. Stevie does not specifically list the duration of her plan, but her applicable commitment period is not less than three years.

The Plan indicates payments will be made through an employer pay order.[13] Plan payments will pay $3,100 to attorney's fees,[14] $310 to filing fees,[15] and $0.00 to unsecured creditors.[16]

Stevie's employment income for 2013, 2014, and 2015 year to petition date was $6,000, $8,072, and $12,857, respectively.[17] Stevie works at Kansas Gas Service as a customer service representative in Overland Park, Kansas.[18] As of her petition date, Stevie had worked at Kansas Gas Service for six months.[19] Stevie lists her current monthly gross income from wages as $3,627.[20] Stevie also lists monthly income of $1,200 in family support payments and $400 in roommate contributions.[21] Stevie's Schedule I monthly net income is $4,551.01.[22]

Stevie does not own any real property,[23] lists zero creditors holding secured claims,[24] and only lists the Internal Revenue Service (IRS) and Kansas Department of Revenue (KDOR) on Schedule E for noticing purposes.[25] Stevie lists $22,038 of personal property of which $21,838 is exempt.[26] Stevie's 2013 Kia Optima accounts for all but $2,200 of her personal property.[27] Stevie's nonexempt property is $45 cash and $155 across three Bank of America checking and savings accounts.[28] A Chapter 7 trustee would likely abandon Stevie's nonexempt assets in a Chapter 7 case as they are not worth liquidating. Stevie's exempt property is: (a) $750 deposit with her landlord and utilities; (b) $1,000 in miscellaneous household goods; (c) $20 in

---

[13] Doc. 13, at 1.
[14] Doc. 3, at 2, ¶ 3.
[15] *Id*. at 2, ¶ 4.
[16] *Id*. at 10, ¶ 14.
[17] Doc. 1, at 4. Stevie estimated her 2013 employment income.
[18] *Id*. at 41.
[19] *Id*.
[20] *Id*.
[21] *Id*. at 42.
[22] *Id*.
[23] *Id*. at 14.
[24] *Id*. at 20.
[25] *Id*. at 22.
[26] *Id*. at 15–19.
[27] *Id*. at 17.
[28] *Id*. at 15.

miscellaneous children's books and posters; (d) $200 in miscellaneous clothing; (e) $30 in miscellaneous jewelry; and (f) $19,838 in the 2013 Kia Optima with 48,000 miles.[29] Schedule F lists $71,143 in unsecured nonpriority claims consisting of $43,085, or over 60 percent, in healthcare debt, and $26,752, or over 37 percent, in student loan debt. Thus, $69,837, or 98 percent of Stevie's unsecured nonpriority debt is healthcare and student loan related. Only $1,306, or 2 percent in unsecured nonpriority claims relates to general consumer debts. Stevie's bankruptcy filing did not result from abusing credit for general consumer needs.

Stevie asserts she does not have the upfront assets to fund a Chapter 7 filing and may *never* be able to accumulate enough savings to do so.[30] Since 2010, Stevie has faced at least five garnishment cases in Shawnee County, Kansas, District Court that all involve healthcare creditors.[31] The instant bankruptcy stayed three active garnishment orders and two active garnishment-related bench warrants.[32]

On August 17, 2015, the Trustee objected to confirmation under §§ 1325(a)(3) and (a)(7)[33] and moved to dismiss or convert Stevie's case to Chapter 7.[34] The Trustee asserts that Stevie stated at the First Meeting of Creditors that she filed in Kansas City instead of Topeka because of Kansas City's lower Trustee fees.[35] The Trustee admits "the debtor appears to need relief" but asserts that "this is an attorney fee only case that does not demonstrate 'special circumstances' to justify a Chapter 13."[36] The Trustee urges the Court to find that the "inability to pay attorneys fees for the filing of a Chapter 7, does not constitute 'special circumstances'

---

[29] *Id*. at 19. The 2013 Optima is titled in an ex-boyfriend's name, but Stevie makes direct payments to the bank.
[30] Doc. 34, at 2 ¶ e (emphasis in original).
[31] *Id*. at 2–3 ¶ e. 1.
[32] *Id*. at 3.
[33] All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 11 U.S.C. §§ 101–1532, unless otherwise specifically noted.
[34] Doc. 25.
[35] *Id*. at 1 ¶ 3.
[36] *Id*. at 2 ¶ 6.

permitting the case to proceed as a Chapter 13."[37]  Thus, the Trustee requests the Court deny confirmation, dismiss the case, or convert the case to Chapter 7.[38]

Of note, the Trustee did not specifically object to feasibility or challenge the reasonableness of the Debtor's attorney's fees of $3,100.

## LAW

Chapter 13 contains two good faith requirements.  Debtors must propose plans and file petitions in good faith.  Section 1325(a)(3) and (a)(7) provide:

> (a) . . . [T]he court shall confirm a plan if—
> . . .
> (3) the plan has been proposed in good faith and not by any means forbidden by law; . . .
> (7) the action of the debtor in filing the petition was in good faith.[39]

Congress did not define good faith in subsections (a)(3) and (a)(7).[40]  The Tenth Circuit has developed several non-exhaustive factors to examine good faith challenges.  Included among those factors are:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
> (3) the probable or expected duration of the plan;
> (4) the accuracy of the plan's statements of the debts, expenses, and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
> (5) the extent of preferential treatment between classes of creditors;
> (6) the extent to which secured claims are modified;
> (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
> (8) the existence of special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> (11) the burden which the plan's administration would place upon the trustee.[41]

---

[37] *Id.* at 9 ¶ 15.
[38] *Id.* at 9 ¶ 16.
[39] BAPCPA added § 1325(a)(7) in 2005.
[40] WILLIAM J. MCLEOD, CHAPTER 13 IN 13 CHAPTERS 69 (M. Regina Thomas ed., 2009).
[41] Flygare v. Boulden, 709 F.2d 1344, 1347–48 (10th Cir. 1983) (quoting United States v. Estus (*In re* Estus), 695 F.2d 311, 317 (8th Cir. 1982)) (defining good faith under § 1325(a)(3)).  Notably, Congress amended the Code in

The Trustee relies on *In re Puffer*[42] to justify Stevie's need to show special circumstances. However, as discussed *infra*,[43] this is not required under the Code. The Tenth Circuit and at least one Kansas Bankruptcy Court "look[] to the totality of the circumstances surrounding each debtor's filing to determine whether . . . [they] have filed their Chapter 13 bankruptcy plan in good faith, as required by 11 U.S.C. § 1325(a)(3)."[44] "*No one factor is determinative*, but it is the totality of the various factors and the facts of the particular case that are considered."[45] Thus, Stevie need not show special circumstances justifying the filing of a Chapter 13 plan over a Chapter 7 liquidation. "Only if there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith."[46]

The Court examines §§ 1325(a)(3) and (a)(7) simultaneously because the good faith analysis under each subsection is the same—the totality of the circumstances.[47]

## ANALYSIS

### A. Stevie Filed Her Chapter 13 Petition and Chapter 13 Plan in Good Faith.

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'"[48] However, the fresh start is not absolute. "The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts—such as child support, alimony, and certain

---

1984 to include the ability-to-pay test under § 1325(b). 8 COLLIER ON BANKRUPTCY ¶ 1325.11[1], at 1325-54 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2016) "[T]he good faith inquiry now 'has a more narrow focus.'" *In re* Cranmer, 697 F.3d 1314, 1319 n.5 (10th Cir. 2012) (quoting Educ. Assistance Corp. v. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987)).
[42] 674 F.3d 78 (1st Cir. 2012).
[43] Note 92.
[44] *In re* Wark, 542 B.R. 522, 527 (Bankr. D. Kan. 2015). *See* MCLEOD, *supra* note 40, at 68 (stating that "[g]ood faith is determined by considering the totality of the circumstances surrounding the filing of both the petition and the plan").
[45] *See* MCLEOD, *supra* note 40, at 69 (emphasis added). *See also In re* Dicey, 312 B.R. 456, 459 (Bankr. D.N.H. 2004).
[46] COLLIER, *supra* note 41, ¶ 1325.04[1], at 1325-17 (citations omitted).
[47] *Wark*, 542 B.R. at 533 n.35.
[48] Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) (quoting Grogan v. Garner, 498 U.S. 279, 286, 287 (1991)).

unpaid educational loans and taxes, as well as liabilities for fraud."[49] Whether Stevie qualifies for a fresh start is not at issue as the Trustee admits she needs relief.[50] Thus, the Court must decide whether Chapter 13 relief is appropriate under the Code.

Chapter 13, commonly referred to as the wage earner chapter, is conceptually a personal or individual reorganization. Individuals with regular income obtain a discharge of most pre-petition debt after successfully completing a court-approved payment plan.[51] Debtors make plan payments from "future earnings or other future income."[52] Conversely, under Chapter 7, "the debtor's assets are immediately liquidated and the proceeds [are] distributed to creditors."[53] Chapter 13 allows the honest but unfortunate debtor time to reorganize her financial matters, including curing pre-petition defaults on secured debt,[54] curing defaulted leases,[55] paying priority claims over three to five years,[56] and frequently—but not always—to provide a distribution to general unsecured claimants who ordinarily receive little or nothing under Chapter 7. An individual may not be forced into Chapter 13[57] and she is at liberty to seek dismissal of her case at any time.[58] From its inception, Congress preferred Chapter 13 over Chapter 7.[59]

An important distinction lies between Chapters 13 and 7 in counsel's ability to collect attorney's fees for debtors seeking competent representation. In Chapter 13, debtors may pay

---

[49] Grogan v. Garner, 498 U.S. 279, 287 (1991).
[50] *Supra* note 36.
[51] *Marrama*, 549 U.S. at 367.
[52] Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015).
[53] *Id.* at 1834. Of course, the Chapter 7 trustee does not ordinarily liquidate exempt assets.
[54] § 1325(b)(5). *See also In re* Taddeo, 685 F.2d 24, 29 (2d Cir. 1982) (stating that "'curing a default' in Chapter 11 means the same thing as it does in Chapters 7 or 13: the event of default is remedied and the consequences are nullified.").
[55] § 365.
[56] §§ 507 and 1326(b)(1).
[57] § 303. *See also In re* Harper-Elder, 184 B.R. 403, 408 (Bankr. D.D.C. 1995) ("Chapter 13 was intended to be purely voluntary. . . .").
[58] § 1307(b).
[59] *In re* Bateman, 515 F.3d 272, 279 (4th Cir. 2008) (quoting *In re* McDonald, 205 F.3d 606, 614 (3d Cir. 2000)). *See also In re* Jackson, 2006 Bankr. LEXIS 4327, at *3 (Bankr. N.D. Ga. Mar. 16, 2006) ("Congress wanted more debtors to file for relief under Chapter 13, rather than Chapter 7.").

their attorney's fees through their plan over three to five years. In Chapter 7, debtors must pay their attorney up front before filing and counsel cannot advise debtors to incur debt to pay for representation.[60] The reality is many debtors cannot afford Chapter 7's upfront costs.

> Most debtors that are contemplating chapter 7 are on the brink of economic disaster. They have creditors harassing them, calling them nonstop, garnishing wages and income tax returns, and seizing their vehicles to satisfy judgments. These hardworking individuals simply do not have the extra funds to pay a bankruptcy attorney up front in full to file a bankruptcy case to stop the creditors.[61]

In Chapter 13 cases, "the court does not approve the employment of a chapter 13 debtor's counsel."[62] Thus, "[a] chapter 13 debtor may generally employ bankruptcy counsel without filing an application to employ."[63] If the debtor's case is converted to Chapter 7, debtor's counsel must seek employment by the Chapter 7 estate pursuant to § 327(e) if she wishes to be paid by assets of the estate. Without such application, compensation may not be awarded.[64]

Unlike other bankruptcy attorneys, a Chapter 7 attorney has no right to compensation under § 330.[65] In *Lamie*,[66] the Supreme Court held that debtor's Chapter 11 counsel could not receive compensation post-conversion from chapter 7 estate funds unless she is employed by the Chapter 7 estate. The result from *Lamie*[67] is "that § 330(a)(1) does not authorize compensation to a Chapter 7 debtor's attorney from estate funds unless the attorney is employed by the trustee

---

[60] *Wark*, 542 B.R. at 531 n.27.
[61] Amanda A. Page, *Chapter 7 Attorneys' Fees: Protecting Debtors While Ensuring Attorneys Get Paid*, AM. BANKR. INST. (Feb. 2, 2015-15:07), http://www.abi.org/committee-post/chapter-7-attorneys%E2%80%99-fees-protecting-debtors-while-ensuring-attorneys-get-paid.
[62] *In re* Bell, 212 B.R. 654, 657 (Bankr. E.D. Cal. 1997) (citing *In re* Fricker, 131 B.R. 932, 939–41 (Bankr. E.D. Pa. 1991)).
[63] *In re* Arnold, 2008 WL 2224932, *1 (Bankr. S.D.Tex. 2008).
[64] *In re* French, 111 B.R. 391, 393 (Bankr. N.D.N.Y. 1989).
[65] William F. Stone, Jr., & Bryan A. Stark, *The Treatment of Attorneys' Fee Retainers in Chapter 7 Bankruptcy and the Problem of Denying Compensation to Debtors' Attorneys for Post-Petition Legal Services They Are Obliged to Render*, 82 AM. BANKR. L.J. 551, 552 (2008).
[66] Lamie v. United States Trustee, 540 U.S. 526 (2004).
[67] *Id.* at 538–39.

under § 327."[68] This "creates severe problems for the debtor's attorney."[69] Attorneys filing chapter 7 petitions must collect fees pre-petition or risk a discharge of pre-petition fees. However, *Wagers*[70] found that retainers paid as an advancement on post-petition services must be placed in a trust account and are not deemed earned until counsel performs those services. The irony is that if debtor's counsel procures a sufficient retainer, to the extent it is not used as of the petition date, the balance is property of the estate subject to turnover to the trustee.[71] On the other hand, if an attorney in a Chapter 7 case does not receive a pre-filing retainer, then the unpaid fees associated with her pre-petition work are dischargeable.[72] This disincentive to competent bankruptcy counsel is profound. Further, it is also difficult and sometimes forbidden for attorneys to solve *Lamie*[73] issues by unbundling or limiting their scope of representation to pre-petition or post-petition services for a Chapter 7 client.[74]

Under Chapter 13, attorney's fees are allowed pursuant to § 330(a) as an administrative expense described in § 503(b)(2). With the enactment of § 330, "Congress intended to provide adequate compensation, on a par with that available in other areas of practice, to attract competent counsel to the bankruptcy specialty."[75] The bankruptcy practice needs competent attorneys as

> [i]t is absolutely imperative that competent counsel be motivated to seek, accept and ably handle Chapter 13 cases. That motivation starts with being fairly compensated for the work they perform. The complexity and importance of the work, alone, justify such compensation, but there are other reasons able counsel are vital to the system. The most important reason is that this Court rather

---

[68] *See* Stone, *supra* note 65, at 554.
[69] Richard I. Aaron, 1 BANKRUPTCY LAW FUNDAMENTALS § 15:51.
[70] *In re* Wagers, 514 F.3d 1021 (10th Cir. 2007).
[71] *Id.*, *In re* Mansfield, 394 B.R. 783 (Bankr. E.D. Pa. 2008).
[72] *Wagers*, 514 F.3d at 1029–30; Rittenhouse v. Eisen, 404 F.3d 395 (6th Cir. 2005).
[73] *Lamie*, 540 U.S. 526.
[74] *See e.g.* DeLuca v. Seare (*In re* Seare), 515 B.R. 599 (B.A.P. 9th Cir. 2014) (unbundling or limited scope representation must comply with the rules of ethics and the Bankruptcy Code based on a qualitative analysis of each individual debtor's case completed at intake to ensure that debtor's reasonable goals and needs are being met); *In re* Ruiz, 515 B.R. 362 (Bankr. M.D. Fla. 2014) (attorneys cannot pick and choose the services they provide to Chapter 7 debtors).
[75] *In re* Commercial Consortium of California, 135 B.R. 120, 126 (Bankr. C.D. Cal. 1991).

routinely sees pro se debtors "give away" rights or property that they would otherwise be legally entitled to retain because of their ignorance of the law.[76]

"[S]tudies show that debtors with legal representation tend to have a much higher success rate in bankruptcy proceedings than pro se filers."[77] In one study, only 0.8 percent of post-BAPCPA *pro se* debtors received a discharge.[78] The same study found that "[n]ot one of the post-BAPCPA cases filed with the assistance of a petition preparer ended in the debtor receiving a discharge."[79] This Court also notes that even experienced non-bankruptcy attorneys who themselves file for bankruptcy relief frequently hire bankruptcy counsel to navigate the Code's unique parameters. Fairly compensated counsel is beneficial to both debtors and the bankruptcy bar because "attorneys must be *zealous* advocates for their clients while attempting to keep their lights on in their own offices."[80] "[P]reserving the integrity of the bankruptcy system includes encouraging, not discouraging, excellence in legal representation of consumer debtors."[81] "A requirement that attorneys provide pre-petition representation for free or that debtors find family members or friends to bankroll their case runs contrary to the priority structure outlined in §§ 330, 503, and 507 and to the notion that debtors are entitled to competent and properly compensated representation."[82]

At issue is whether the Code permits Stevie to file under Chapter 13 in good faith when allegedly the only reason she elected Chapter 13 is because she does not have the ability to pay up front for representation in Chapter 7.[83] Bankruptcy courts are divided on this issue. Courts in

---

[76] *In re* Beck, 2007 Bankr. LEXIS 517, at *9 (Bankr. D. Kan. Feb. 21, 2007) (internal footnotes omitted).
[77] Alexander F. Clamon, *Per Se Bad Faith? An Empirical Analysis of Good Faith in Chapter 13 Fee-Only Plans*, 30 EMORY BANKR. DEV. J. 473, 481 (2014).
[78] Lois R. Lupica, *The Consumer Bankruptcy Fee Study: Final Report*, 20 AM. BANKR. INST. L. REV. 17, 81 (2012).
[79] *Id.*
[80] *See* Page, *supra* note 61 (emphasis in original).
[81] Morgan D. King, *Between the Charybdis of* Biggar *and the Scylla of* Lamie*: How Can a Debtor's Lawyer Get Paid?*, 2004 No. 6 NORTON BANKR. L. ADVISER 2.
[82] *In re* Busetta-Silvia, 314 B.R. 218, 228 (B.A.P. 10th Cir. 2004).
[83] Of course, there are myriad benefits to filing a chapter 13 case, such as the super discharge, § 1303 powers, retention of non-exempt property, and the binding effect of a confirmed Chapter 13 plan.

New York, New Hampshire, and Massachusetts have rejected attorney-fee-only plans as contrary to the spirit and purpose of the Code.[84] However, three circuit courts have found that attorney-fee-only Chapter 13 plans are not *per se* bad faith.[85] Courts in North Carolina, New Mexico, Wisconsin, Illinois, and Kansas have also upheld attorney-fee-only Chapter 13 plans.[86]

The Trustee cites three circuit cases—*Puffer*,[87] *Brown*,[88] and *Crager*[89]—and one Western District of Missouri case—*Arlen*[90]—addressing good faith in attorney-fee-only Chapter 13 plans. The First Circuit in *Puffer* determined that attorney-fee-only Chapter 13 plans are not *per se* bad faith. *Puffer* noted that good faith under § 1325(a)(3) is analyzed based on the totality of the circumstances and the debtor "carries a heavy burden of demonstrating special circumstances" justifying their plan.[91] Notably, the last component of this court-made rule is not found in the Code and is not the law in the Tenth Circuit.[92] Further, *Law v. Siegel*[93] does not authorize this Court "to recognize exceptions to the Bankruptcy Code that are not statutorily authorized."[94] Thus, the court-created heightened confirmation standard in *Puffer* requiring 'special circumstances' violates *Law v. Siegel*—bankruptcy courts do not legislate. "[C]ourts should not

---

[84] *In re* Paley, 390 B.R. 53, 59 (Bankr. N.D.N.Y. 2008); *In re* Dicey, 312 B.R. 456, 459–60 (Bankr. D.N.H. 2004); *In re* Buck, 432 B.R. 13, 21–22 (Bankr. D. Mass. 2010).
[85] *In re* Brown, 742 F.3d 1309 (11th Cir. 2014); *In re* Puffer, 674 F.3d 78 (1st Cir. 2012); *Matter of* Crager, 691 F.3d 671 (5th Cir. 2012).
[86] *See In re* Banks, 545 B.R. 241 (Bankr. N.D. Ill. 2016) (finding special circumstances allowing debtor to file an attorney fee-only Chapter 13 instead of a Chapter 7); *In re* Wark, 542 B.R. 522 (Bankr. D. Kan. 2015); *In re* Elkins, 2010 WL 1490585, at *3 (Bankr. E.D.N.C. Apr. 13, 2010) (stating that a Chapter 13 trustee should not summarily object to the presumptive fees in a Chapter 13 case solely because the case is an attorney-fee-only case); *In re* Molina, 420 B.R. 825, 829–33 (Bankr. D.N.M. 2009); *In re* Guzman, 345 B.R. 640 (Bankr. E.D. Wis. 2006) (confirming debtors' plan showing no disposable income); *In re* Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006) (debtors acted in good faith proposing a no projected disposable income plan).
[87] *In re* Puffer, 674 F.3d 78 (1st Cir. 2012).
[88] *In re* Brown, 742 F.3d 1309 (11th Cir. 2014).
[89] *Matter of* Crager, 691 F.3d 671 (5th Cir. 2012).
[90] *In re* Arlen, 461 B.R. 550 (Bankr. W.D. Mo. 2011). The *Arlen* Court found the record devoid of evidence supporting confirmation of an attorney-fee-only plan.
[91] 674 F.3d at 83.
[92] *Wark*, 542 B.R. at 527.
[93] 134 S. Ct. 1188 (2014).
[94] Daniel J. Sheffner, *The Chapter 13 Debtor's Absolute Right to Dismiss*, 63 CLEV. ST. L. REV. 833, 863 (2015).

overhaul the traditional good faith analysis when dealing with fee-only plans."[95] In assessing good faith under §§ 1325(a)(3) and (a)(7), the Court need only apply a totality-of-the-circumstances test.

The Eleventh Circuit in *Brown*[96] affirmed the bankruptcy court's denial of an attorney-fee-only plan, applying a totality-of-the-circumstances approach. The Eleventh Circuit noted that "the bankruptcy court did not apply a categorical rule prohibiting attorney-fee-centric or attorney-fee-only chapter 13 plans."[97] Additionally, "[a] few months after denying Brown's Chapter 13 plan, the same bankruptcy judge confirmed an attorney-fee-centric Chapter 13 plan . . . ."[98]

In *Crager*, the Fifth Circuit found that "[t]here is no rule in this circuit that a Chapter 13 plan that results in the debtor's counsel receiving almost the entire amount paid to the Trustee, leaving other unsecured creditors unpaid, is a per se violation of the 'good faith' requirement . . . ."[99] The *Crager* bankruptcy court also noted "that it would 'border on malpractice' for Crager's attorney to advise her to file a Chapter 7."[100] Ultimately, applying the totality-of-the-circumstances test, the court found the debtor's filing responsible, given the debtor's circumstances.[101]

In Missouri, *Arlen*[102] held that "[a] Chapter 13 plan which pays only the administrative expenses of the proceeding, primarily debtors' counsel's fees, and makes no payment to any creditor, secured or unsecured, violates the spirit and purpose of Chapter 13 and is not proposed

---

[95] *See* Clamon, *supra* note 77, at 473.
[96] 742 F.3d 1309.
[97] *Id*. at 1318.
[98] *Id*. at 1318 n.7.
[99] 691 F.3d at 675–76.
[100] *Id*. at 675.
[101] *Id*.
[102] 461 B.R. 550.

16.05.03 (Dunson) Order Overruling Trustee's Objection and Motion to Dismiss.docx   12

in good faith."[103] This Court does not find *Arlen* persuasive. Instead, the Court finds *Molina*[104] and *Wark*[105] persuasive. In 2009, *Molina* found that a debtor in economic straits may file an attorney-fee-only plan.[106] Recently in *Wark*, another bankruptcy judge in this District confirmed several attorney-fee-only plans, finding that the totality-of-the-circumstances test applies to determine good faith under § 1325—specifically rejecting special circumstances as a piece of the § 1325 good faith inquiry.[107] Further, "the 'primary purpose of the good faith inquiry is to determine under the totality of the circumstances of a case whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13.'"[108] In referencing attorney-fee-only Chapter 13 cases, *Wark* noted:

> Yes, there may be no distribution to unsecured creditors. Again, in a perfect world, all debtors would file Chapter 13 plans and repay all their debts, and no creditor would walk away empty handed. But we do not live in that world.
>
> Instead, this is a world where debtors are harassed by daily collection calls for admittedly delinquent debts. Where they are repeatedly required to miss work to attend a cattle call docket to explain why they haven't paid old medical bills. Where they cannot afford to keep the gas on, and feel compelled to incur title or payday loans at exorbitant rates to feed their families. Where their meager wages are reduced even further by garnishments. Where they opt not to seek necessary medical care or take prescribed medication because they cannot afford it. This is the world these Debtors live in, and this real world sometimes requires bankruptcy, even if the debtor cannot save enough to pay the up front [sic] attorney's fees required to file a Chapter 7.[109]

Courts rejecting attorney-fee-only Chapter 13 plans express concern that the filing itself solely benefits the attorney—not the debtor. In Kansas, and in general, attorney's fees in

---

[103] *Id.* at 558.
[104] 420 B.R. 825.
[105] 542 B.R. at 530.
[106] 420 B.R. at 830–33.
[107] 542 B.R. 522, 527.
[108] *Id.* at 577–78 (citing *In re* Sandberg, 433 B.R. 837, 845 (Bankr. D. Kan. 2010)).
[109] *Id.* at 578.

Chapter 13 reorganizations are higher than Chapter 7 liquidations.[110] Courts fear attorneys choose Chapter 13 instead of Chapter 7 to secure higher fees and win the client when they cannot otherwise afford Chapter 7's upfront costs. This view is misplaced for two reasons. First, under an attorney-fee-only plan, that attorney foregoes compensation should the debtor's plan not be confirmed. Additionally, confirmation does not mean that same attorney is off to the bank. That attorney may not be fully compensated should the debtor's plan collapse down the road. Attorneys filing Chapter 7s do not face this risk. This is an important distinction as much of an attorney's time and effort is spent pre-petition and pre-confirmation driving a debtor's plan to confirmation. The reality is that lower income debtor's cases are time consuming. Second, money is worth more the sooner it is received—the time value of money.[111] Securing a fixed fee over three to five years is different than receiving that same guaranteed fee today. An attorney solely out for herself would prefer receiving her fee up front. This is different than waiting to see if a debtor's three-to five-year payment plan comes to fruition. Allowing an attorney-fee-only Chapter 13 plan gives debtors access to the automatic stay and fresh start "while fairly compensating the attorney for the risk of nonpayment."[112]

Chapter 13 cases are more work to prepare, are more involved, and expose a debtor's attorney to nonpayment. Frequently, a Chapter 13 bankruptcy is financially a losing proposition for a debtor's attorney. Most of an attorney's work in the majority of Chapter 7 cases is completed up front during the early stages of a case that generally closes within six months. However, a Chapter 13 debtor's attorney is obligated to her clients for three to five years during which much can happen requiring additional attorney time. Chapter 13 debtors' attorneys often

---

[110] *Id.* at 531–33.
[111] The time value of money is the idea that money today is worth more than the same amount of money in the future due to its present earning capacity.
[112] *See* Clamon, *supra* note 77, at 483.

16.05.03 (Dunson) Order Overruling Trustee's Objection and Motion to Dismiss.docx      14

help their clients through payment defaults, repair or replacement of essential property such as vehicles and household appliances, unemployment or underemployment, and medical bills. All of this occurs after the debtor's attorney successfully navigates plan confirmation but before the attorney receives full payment through the plan.

Some believe that "success in chapter 13 can be looked at by the percentage of cases in which a repayment plan is completed. With only a little over one-third of chapter 13 debtors achieving plan completion, some may conclude that chapter 13 is a failure."[113] However, this is not true in Kansas. Although it would not change the Court's analysis, the Court notes that the Chapter 13 process in Kansas works well.[114] In Kansas, the Chapter 13 confirmation rate is more than 90 percent, compared to the national average of 70 percent from 2007–13.[115] The Kansas Chapter 13 plan completion rate exceeded 60 percent for the same time period.[116] In 2013, 71 percent of Kansas Chapter 13 cases were closed by discharge compared with 45 percent nationally.[117] Nationally, only 36 percent of Chapter 13 debtors complete their plans.[118] At less than one percent, Kansas also posts one of the lowest refiling after dismissal rates in the country.[119]

Under the totality of the circumstances, Stevie filed her petition and Plan in good faith in accordance with §§ 1325(a)(3) and (a)(7). Section 1325(b)(1) also provides for plan confirmation if the debtor commits all projected disposable income to the plan during the commitment period. This suggests "that the percentage of repayment to general unsecured

---

[113] Ed Flynn, *Chapter 13 Case Outcomes by State*, 33 AUG. AM. BANKR. INST. J. 40, 78 (2014).
[114] *See Wark*, 542 B.R. at 578.
[115] Flynn, *supra* note 113, at 41.
[116] *Id*. at 76.
[117] The United States Department of Justice, *Chapter 13 Trustee Data and Statistics*, https://www.justice.gov/ust/private-trustee-data-statistics/chapter-13-trustee-data-and-statistics.
[118] Flynn, *supra* note 113, at 76.
[119] *Id*. at 76.

creditors [is] not an issue of good faith."[120]  Thus, the Code does not require a minimum distribution to unsecured creditors as part of the §§ 1325(a)(3) and (a)(7) analysis as long as debtors comply with §§ 1325(b)(1) and 1325(a)(4).

There is no doubt Stevie needs financial relief and her circumstances demonstrate she qualifies for Chapter 13.  Stevie has faced numerous healthcare-related garnishments resulting in at least two bench warrants.  Stevie is living day-to-day on the financial outskirts of the economy and Chapter 13 affords her immediate relief.  Stevie chose Chapter 13 after consulting with bankruptcy counsel because she could not afford Chapter 7's upfront filing costs.  Stevie has no previous bankruptcy filings within the past eight years, there are no inaccuracies on her schedules, and no other statutory provisions prevent Chapter 13 relief.  The Court does not find any evidence that Stevie's petition or Plan are an attempt to abuse or game the provisions, purpose, or spirit of Chapter 13.  The Court does not find the treatment of Stevie's unsecured creditors unfair as those creditors would receive the same under Chapter 7 because Stevie does not hold any nonexempt property that a Chapter 7 trustee would liquidate.

Importantly, the Code does not require a minimum distribution to general unsecured creditors.[121]  Section 1325(a)(4) only requires general unsecured creditors to receive at least as much as they would under a hypothetical liquidation.  Additionally, unsecured creditors may fare better in a Chapter 13 because Stevie must devote at least the next three years of income to fund her Plan, and unsecured creditors may participate in any increased future earnings.  Under Chapter 7, unsecured creditors would not share in any increased earnings or post-petition windfalls.  Thus, unsecured creditors are not disadvantaged, and Stevie has shown her petition and Plan comply with the good faith provisions of §§ 1325(a)(3) and (a)(7).

---

[120] *See* Clamon, *supra* note 77, at 489–90.
[121] § 1325(a)(4).  *See also* Clamon, *supra* note 77, at 476 ("[T]he Code doesn't necessarily require any repayment to unsecured creditors in chapter 13.").

"[C]ourts have 'repeatedly emphasized Congress's preference that individual debtors use Chapter 13 instead of Chapter 7.'"[122] The Supreme Court has held that bankruptcy courts may not "recognize exceptions to the Bankruptcy Code that are not statutorily authorized."[123] It is ethical for attorneys to provide relief to their clients now and receive payment over time. Read together with the aforementioned analysis, the Code does not prevent qualified debtors from filing attorney-fee-only Chapter 13 plans.

### B. Stevie's Chapter 13 Attorney's Fees Are Reasonable.

Under § 330, the Court finds that Stevie's attorney's fees of $3,100 are reasonable based on the Court's experience adjudicating Chapter 13 filings in the District of Kansas.[124] Further, the Trustee did not object to the reasonableness of Stevie's attorney's fees.

## CONCLUSIONS OF LAW

Based on a totality of the circumstances, Stevie's Chapter 13 petition and Plan were filed in good faith in accordance with §§ 1325(a)(3) and (a)(7). Stevie need not make a showing of special circumstances and nothing in the Code forbids attorney-fee-only Chapter 13 plans.

**IT IS ORDERED** that the Chapter 13 Trustee's objection to confirmation is overruled and his motion to convert or dismiss is denied.

**IT IS SO ORDERED.**

###

---

[122] *In re* Bateman, 515 F.3d 272, 279 (4th Cir. 2008) (quoting *In re* McDonald, 205 F.3d 606, 614 (3d Cir. 2000)).
[123] *See* Sheffner, *supra* note 94, at 863. *See also* Law v. Siegel, 134 S. Ct. at 1194–97.
[124] While the Kansas City Division has not established a baseline "no-look" Chapter 13 fee, the Topeka division in *In re Beck* set the fee for an average Chapter 13 below-median income debtor case at $2,800 "unless the debtor is an 'above-median debtor,' . . . and unless counsel is required to file, for a repeat filer, a Motion to Extend the Automatic Stay." 2007 Bankr. LEXIS 517, at *22–28 (Bankr. D. Kan. Feb. 21, 2007). *See also* Judge Janice Miller Karlin, *Professional Fee and Expense Guidelines* (January 7, 2010), http://www.ksb.uscourts.gov/index.php/chambers/judge-karlin/312-professional-fee-and-expense-guidelines (last visited Apr. 21, 2016) (the presumptively reasonable fee for an average Chapter 13 case for a below-median income debtor is $3,100, which includes $300 for end of the case work).

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS